## No. 10,259.

### JOHN BENNETT OR BENIT VS. LOUIS CIGNONI.

41 1145
45 1132

In a controversy involving the legitimacy of a party, the presumption arising in favor of such legitimacy out of the general repute of the party as the son of one whose estate he claims as his legitimate issue, may be rebutted by testimony negativing the fact of his legitimacy. In such a case the judgment should be one of non-suit, and not a final judgment rejecting the demand.

APPEAL from the Civil District Court for the Parish of Orleans.
*Rightor,* J.

*Branch K. Miller* for Plaintiff and Appellee:

1. Until it be shown that there is written evidence of a party's parentage, it may be proved by parol. 18 L. 594; 13 L. 109; 8 R. sec. 279; 20 Ann. 97.
2. Legitimacy is presumed. Proof that a party has always been called by the surname of one from whom he claims to be born, who has provided for maintainance and settlement of the party so claiming, who has been acknowledged by the world, and the family of the person he claims as parent, makes full proof of legitimate filiation in the presence of a recital in six wills of the father, made at intervals, same very long, impugning the legitimacy of his offspring. 2 Wharton on Evidence. sec, 1298.
3. Declarations attacking the legitimacy of a member of a family should be scrutinized closely as to their credibility, 1 Wharton on Evidence, sec, 213.
4. No declaration of a parent can affect a child born in marriage. 7 N. S. 553; 4 Ann. 347; 7 Ann. 242.

*W. E. Murphy* and *Frank D. Chrétien* for Defendant and Appellant:

*Prima facie* proof of legitimate filiation, under Art. 195 of the Civil Code of 1870, is established by showing uniform and general repute. Bishop, Marriage and Divorce, Vol. 1, sec. 438.

The presumption arising from facts which tend to establish the status of marriage is not conclusive, but subject to be rebutted by testimony negativing the fact of marriage. 15 Ann. 46.

The declarations of the deceased in his last wills and testaments that he had never been married to the mother of plaintiff and that plaintiff was his natural son, destroy all presumption that may arise from testimony of his verbal declarations, such as calling the plaintiff "my boy," "my son." 35 Ann. 630; 15 Ann. 46, 410; 20 Ann. 97; 15 Ann. 410; 32 Ann. 1264; 3 Ann. 1388; 6 L. 470.

This Court takes judicial cognizance of the universal custom in all the catholic churches in the world, that a register of Baptism is kept with great care, and that extracts from such register, duly attested, are legal evidence in the courts of Louisiana. A failure, in plaintiff, to procure a copy of such register, will be taken as proof against him. 40 Ann. 81.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff, who claims to be the sole, legitimate surviving issue of Charles Bennitt or Benit, brings this suit to reduce to the disposable portion, the last will of the deceased who therein made the defendant his universal legatee.

The defense is substantially a denial that plaintiff is the legitimate son of the deceased, and this appeal is taken from a judgment which rejected plaintiff's demand.

His case is, in the main, made up of testimony showing that he was for many years recognized as his son by the deceased.

His own testimony is to the effect that he was born in Mexico of the lawful marriage between Charles Bennett or Benit, and his mother, whose family name was Morales, but whose given name is unknown to him; that he lost his mother when he was yet an infant, and that, at the age of three years he came to this country and to this city, in company with, and under the charge and custody of Charles Bennitt, who took care of him, raised him and generally and continuously treated him as his legitimate son.

That testimony is, in the main, corroborated by that of several other witnesses, from all of which it appears that for many years plaintiff had the general reputation of being the son and legitimate issue of Charles Bennett.

But, apart of the declarations which he testifies to have been made to him by Charles Bennett, to the effect that the latter had been lawfully married to plaintiff's mother in Mexico, the record is absolutely barren of any evidence in support of the existence of such a marriage, or of any extract from the register of births or baptisms kept agreeably to law or to the usages of Mexico, in which the churches keep a register of baptisms, of which fact the court must take judicial cognizance. While the testimony of all the witnesses in the case does show that, at all times, the deceased had always treated plaintiff as his son, no one besides plaintiff himself has testified that he had ever recognized the latter as his legitimate son.

And, on the other hand, it is in proof, that Charles Bennett had frequently stated, at times not suspicious, that plaintiff was only his *natural* son, and that he frequently, when angry, called him a *bastard*.

It also appears that the deceased had made six successive wills, in every one of which, he made the solemn declaration that he had no legitimate descendants. In one of these wills, by which he made a legacy in favor of plaintiff, he described him as his *natural* son; and in

another will in which he likewise provided for him, he described him simply as " John Bennett of this city."

That array of facts and circumstances are, and must be held, as amply sufficient to effectively rebut the presumption of plaintiff's legitimacy arising from the facts proved in the record touching his general reputation as the son of Charles Bennett; and this leaves his case stripped of all evidence in support of the alleged lawful marriage between his mother and Charles Bennett.

An unbroken line of decisions of this court, predicated on the textual provisions of our Code, and on the spirit of our laws on the sacred character of marriage, can be invoked as authority for the legal doctrine involved in that proposition. Homes vs. Homes, 6 La. 470; Phibrick vs. Spangler, 15 Ann. 46; McConnell vs. New Orleans, 15 Ann. 410; Succession of Heebee, 20 Ann. 97; Blasini vs. Blasini, 30 Ann. 1388; Benairs vs. Barba, 32 Ann. 1264; Powers vs. Charmbury's executor, 35 Ann. 630.

We, therefore, conclude that plaintiff has failed to make out his case.

But the negative testimony contained in the record on the question of his legitimacy is not conclusive against the possible existence of the lawful marriage which he alleges to have been contracted by his mother with Charles Bennett; hence his demand should not be absolutely or finally rejected; and in that feature, the judgment rendered below is, in our opinion, erroneous. His present failure to have introduced evidence, which was and is yet within his reach, in support of the marriage which underlies his right of recovery, if it ever existed, cannot debar him of future efforts in that direction.

That right must be secured to him by the judgment to be rendered in this case. Succession of Hubee, 20 Ann. 97; Succession of Kate Townsend, 40 Ann. 81.

It is, therefore, ordered that the judgment appealed from be amended so as to make it a judgment of non-suit, and that as thus amended said judgment be affirmed, costs of appeal to be taxed to the defendant and appellee.